BRANIGAN, Plaintiff in error, vs. THE STATE, Defendant in error.

*September 17—October 11, 1932.*

*Lowell T. Thronson* of Madison, attorney, and *W. H. Arnold* of Beloit of counsel, for the plaintiff in error.

For the defendant in error there was a brief by *Alfred L. Godfrey,* special prosecutor for Rock county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Godfrey* and *Mr. Messerschmidt.*

FOWLER, J. That the resolution set out in the information was by the defendant written, introduced, and sent up to the city clerk for reading in the course of common council proceedings and was so read, was admitted by the defendant on the trial. That the charge contained therein was false was also conceded by him on the trial. That the resolution charged Judge GRIMM with an act having direct tendency to injure him in reputation, degrade and disgrace him in society, and bring him into public distrust, scorn, contempt, and hatred, is manifest. Malicious publication of such a writing constitutes libel. This is so elementary as not to need citation of authority in its support. Sec. 348.41 (1) and (2). Stats., provide that any person guilty of libel shall be punished by imprisonment in the county jail not more than one year or by a fine of $250, and that any person who in the presence of other than the person slandered shall maliciously speak false and defamatory words concerning another which shall expose him to hatred, contempt, or ridicule shall be subject to the same penalty. Malicious publication of the resolution therefore subjected the defendant to prosecution

for libel, and the malicious speaking of the words of the resolution would subject him to prosecution for slander.

The defendant contends that the court erred: (1) in refusing to make the information more definite and certain; (2) in refusing to require the district attorney to elect on which count he would proceed; (3) in refusing to dismiss counts one, two, and four for want of sufficient proof of slander by two witnesses; (4) in refusing to dismiss all the counts for the reason that the resolution involved was privileged; (5) in assuming power to charge the jury; (6) in not giving his charge as merely advisory; (7) in exhibiting prejudice which operated to deny the defendant a fair trial; (8) in holding that the verdict of guilty is sustained by the evidence.

(1) (2) Assignments one and two are sufficiently disposed of by saying that if the court erred as therein charged the errors were not at all prejudicial to the defendant. That the information informed the defendant for what act he was being prosecuted is plain. The information should have been made more definite and certain by limiting the charge to one specific charge of libel, but this point is covered by what is said in treating other assignments of error.

(3) The court should not have submitted any charge of slander to the jury, but for reasons hereinafter stated his refusal to dismiss count two was not error and refusal to dismiss counts one, three, and four was not prejudicial.

(4) Appellant's counsel did not argue this assignment of error, presumably because this court has held that the constitutional provisions respecting the absolute privilege of members of the legislature, secs. 15 and 16, art. IV, do not apply to proceedings before the common council of cities. *Buckstaff v. Hicks,* 94 Wis. 34, 39, 68 N. W. 403. This in effect has been held elsewhere, under the similar common-law rule and other constitutional provisions. *Mauk v. Brundage,* 68 Ohio St. 89, 67 N. E. 152; *Blakeslee v. Car-*

*roll,* 64 Conn. 223, 29 Atl. 473; *Trebby v. Transcript Pub. Co.* 74 Minn. 84, 76 N. W. 961. This leaves the only question involved one of conditional or qualified privilege. Doubtless situations may arise in which statements made or published by a member in proceedings before a city council are privileged as a matter of law, and in this sense are absolutely privileged, but the privilege involved is nevertheless a conditional privilege. The word "absolute" was used in this sense in *Wachsmuth v. Merchants' Nat. Bank,* 96 Mich. 426, 56 N. W. 9, and *Bolton v. Walker,* 197 Mich. 699, 164 N. W. 420.

It is essential to a conditional privilege that the statement made or published be made in good faith. *Buckstaff v. Hicks, supra.* That the element of good faith essential to conditional privilege was here negatived by the evidence is too plain to require elucidation. It would serve no needful purpose, and would tend to detract from the reputation of the defendant if or so far as it is good to detail this evidence. The jury found the defendant guilty. That the drawing and introduction of the resolution was not done in good faith had to be established by the evidence to warrant conviction must have been understood by the jury. The court so instructed them, and no fault is found with the instruction if the privilege was conditional as distinguished from absolute.

(5) The contention that under the provision of the constitution of Wisconsin, art. I, sec. 3, that in criminal prosecutions for libel the jury is the judge of both the facts and the law, the court has no right or power to instruct the jury at all, is contrary to the rulings of the courts of other states having similar constitutional provisions. *People v. Pryal,* 25 Cal. App. 779, 147 Pac. 114; *State v. Jacobs,* 166 Minn. 279, 207 N. W. 648; *Nicholson v. State,* 24 Wyo. 347, 157 Pac. 1013. So also under a statute of Parliament of like effect. *The King v. Burdett,* 106 Eng. Rep. (full reprint) 873, 905. On this point Cooley's Constitutional Limitations

(6th ed.), p. 569, after saying that the jury is the ultimate judge of both facts and law in such cases, states:

"Nevertheless we conceive it to be proper, and indeed the duty of the judge, to instruct the jury upon the law in these cases, and it is to be expected that they will generally adopt and follow his opinion."

Moreover, the judge may in ordinary cases, civil as well as criminal, wherein the jury is the judge of the facts, properly state to the jury his opinion as to what the evidence proves, if, as was done here, he distinctly informs the jury that they are not bound by his opinion, but are themselves the judges of the facts and must determine them according to their own independent judgment. *Jessner v. State,* 202 Wis. 184, 231 N. W. 634. If the trial judge may so state as to the facts, with greater reason may he state to the jury his opinion as to the law in a case of criminal libel, although the jury in such a case is the judge of the law.

(6) The instruction which the appellant contends is not merely advisory but by its language imposes on the jury the duty to take the law from the court is as follows:

"The instructions which the court will give you contain a statement of the law applicable to the facts and issues of this case as the court understands the law to be. Under the constitution you have a perfect right to disregard all of these instructions, if you are satisfied from your own knowledge of the law that the court is wrong. Before assuming such responsibility, however, you must be certain that you are not acting from impulse or prejudice or controlled by your will or wishes, but rather that you are acting upon a deep and confident conviction that your understanding of the law is right and the court's understanding of the law is wrong. Before saying this on your oath, it is your duty to reflect whether from your habits of thought, your duty and experience, you are better qualified to judge of the law than this court. If, under these circumstances, you are prepared to say that the court is wrong in its explanation of the law, the constitution gives you the right to so find. If you find

that the law applicable to the facts and circumstances of this case, as stated by the court, is correct, then it is your duty to apply the law as the court instructs you and determine the guilt or innocence of the defendant from all the facts and evidence in the case and the instructions of the court as so given."

This instruction is substantially that approved in *Nicholson v. State, supra.* In Wyoming the constitutional provision is like ours except that it provides that the jury shall determine the facts and the law "under the direction of the court," but the phrase in quotation does not detract from its force as authority on the precise point here under consideration. A like instruction was approved in *People v. Seeley,* 139 Cal. 118, 72 Pac. 834, under a constitutional provision to the precise effect of ours. The instruction clearly informed the jury that they were the judges of the law, but cautioned them that they should accept the judge's view of the law unless they considered their own judgment better than his as to what the law is. This is no more a misdirection than was that approved by this court in *Schmidt v. State,* 159 Wis. 15, 149 N. W. 388, wherein the trial judge instructed the jury that the evidence established the defendant's guilt and that while it was in their power to return a verdict of not guilty they would violate their oaths as jurors if they did so. A similar instruction was recently approved in *Balthazor v. State,* 207 Wis. 172, 240 N. W. 776, 781. We consider the instruction advisory rather than directory and not erroneous.

(7) The contention that the trial judge exhibited prejudice to the defendant's hurt before the jury is based upon the giving of the instruction above considered and upon the fact that he made statements claimed to be of a prejudicial nature during the trial. What is above said as to the instruction indicates that we do not consider it prejudicial. It conduces to a fair trial, rather than prevents it.

The only statement of the trial judge upon the trial to which we are referred as indicating prejudice towards the defendant was made when the defendant had testified that his attorney told him to apologize to Judge GRIMM and instead of apologizing himself he sent his attorney to Judge GRIMM to explain the situation. The defendant then attempted to state what the attorney reported to him Judge GRIMM said as to his feelings about the defendant's conduct. On objection to this being sustained the judge remarked to the witness that he had had plenty of time to apologize since. This was manifestly true although it might better have been left unsaid. However, we do not regard the making of this remark as having influenced the verdict.

(8) The contention that the evidence does not support the verdict is based upon the proposition that count two upon which the defendant was convicted charges slander and that two witnesses did not testify that the defendant spoke the false and defamatory words which the statute, sec. 348.41 (3), makes essential to support such a charge. It is to be noted that the fourth count of the information expressly charges slander and that as the court submitted a verdict of guilty upon each count the charge of slander was submitted. The idea of the prosecuting attorney that the defendant violated the provision of the statute making slander an offense, was based upon the supposition that on introducing the resolution in the council proceedings the defendant himself orally read it to those present. Two witnesses did not testify that he so read it, and all the positive evidence to the point is to the contrary. So it must be conceded that the evidence does not support a conviction of criminal slander. As to the point that the second count charges slander, words are used therein appropriate to stating that charge. By excluding other words the count charges that the defendant in the presence and hearing of others maliciously spoke of and concerning Judge GRIMM the false and defamatory

words set out in the information. Slander is committed by the mere speaking of false and defamatory words in the presence and hearing of others than the one of whom they are spoken. However, the words "make, publish, and declare" used in the second count of the information have no proper place in charging slander. They perform no function in such a charge. They do not describe or relate in any way to any element of the offense. On the other hand, these words are the common phrase used in charging libel, which consists of maliciously publishing written false and defamatory words. They relate to essential elements of libel. The word "make" imputes that the resolution was reduced to writing. The word "resolution" itself imputes that it was written. "A resolution is . . . a suggestion or direction in writing." *Cape Girardeau v. Fougeu,* 30 Mo. App. 551, 556. The words "publish and declare" impute that the resolution was in some way brought to the attention of others. The words "speak" and "in the presence of others" are not inapplicable to charging a libel when it is published as it may be by the speaking of the written words in the presence of others. Newell, Libel and Slander (4th ed.) p. 939.

Thus the second count of the information charges libel, even if it charges slander also.

It is urged by the defendant that this constitutes duplicity and renders the information bad. But the slander and the libel covered by the information refer to only a single act, and an information is bad for duplicity only when it appears upon its face that two or more distinct acts are involved in the two or more charges. *State v. Heiden,* 139 Wis. 519, 121 N. W. 138. The count is subject to criticism for including the two offenses in a single statement instead of charging each offense separately. It may properly be said that the pleading is inartistic. But informations or convictions under them are not to be overthrown for this reason.

Informations may be bungling and verbose and contain immaterial and extraneous matter and yet be valid. Sec. 355.22 (4) provides that any information shall be deemed good when the offense charged is set forth with such degree of certainty that the court may pronounce judgment upon conviction according to the right of the case. Sec. 355.23 (4) provides that no information shall be deemed invalid or the judgment thereon affected by reason of any defect or imperfection which shall not tend to prejudice the defendant. We do not perceive that if the count does contain a double charge, this prevented the court from pronouncing judgment according to the right of the case or that its defects and imperfections in matters of form tended to prejudice the defendant. The information is based on a single statute covering both libel and slander. Sec. 348.41. The same punishment is provided for both offenses. Many decisions of this court hold that when a statute makes it a crime to do any one of different things mentioned disjunctively, all may be charged conjunctively in a single count as a single offense and there can be but one conviction and one punishment in such case. 2 Callaghan's Wis. Digest, 1618. The practice of charging several violations of a statute relating to the sale of intoxicating liquors in a single paragraph is familiar. So if one be charged with abandonment of his wife and child, under a statute making it an offense to abandon either, it is proper to charge the abandonment of both conjunctively in a single statement, and proof of abandonment of both or either will support conviction and authorize imposition of a single sentence. *Jenness v. State,* 103 Wis. 553, 79 N. W. 759. Illustrations of the situation herein might be multiplied.

It is argued that the verdict will not support conviction because there is no telling whether the jury considered the defendant guilty of slander or libel. But if the jury considered him guilty of slander it was because they found that he maliciously orally read the resolution in the council, and

if they so found they necessarily found him guilty of libel. For the resolution was in writing, and the oral reading of it to the council constituted libel if it was read maliciously. The malice involved in slander is precisely the same as that involved in libel. Thus every essential of libel was in fact found even if the jury considered they were finding the defendant guilty of slander. And as the statute under which the defendant was prosecuted imposes the same penalty for the two offenses, no possible prejudice results to the defendant by considering the sentence as imposed for conviction of libel of which he was necessarily found guilty by the jury if considered by them as guilty of slander.

It is urged that by not returning verdicts of guilty on the other three counts of the information the jury acquitted the defendant on these three counts; and that as all four counts involved the same act, the verdict returned is inconsistent as the jury found the defendant both guilty and not guilty and the verdict therefore cannot support a judgment of conviction. While the rule is that if verdicts of guilty of several offenses, the greatest of which includes those of lower degree, as on a charge of murder, be submitted to the jury with one verdict of not guilty, the return of a verdict of guilty of one of the lower offenses operates to acquit the defendant of all offenses of higher degree, that rule has no application here. The same single act is involved under each count. A verdict of guilty upon count two is of precisely the same effect as a verdict of guilty on each of counts one, two, and three, all which charge libel. It is plain that in finding the defendant guilty of the act involved in count two the jury did not intend to find him not guilty of that act and that by not returning any verdict on counts one and three they did not intend to acquit him of the act of which they found him guilty. As to count four expressly charging slander, if it be considered as acquitting him of slander it leaves his conviction of libel standing. And if it be surmised that the

jury intended to find the defendant guilty of slander by the verdict on count two, what is said above as to its operating as a conviction of libel applies. The jury manifestly did not intend to find the defendant both guilty and not guilty of the same act or offense, and the verdict should be given effect according to the manifest intent of the jury. This applies with especial force because the jury in the instant case was the judge of the law as well as the facts. They had power to determine that under the law their verdict was effective to carry out their intent, and we assume that they did so determine and give their determination effect accordingly.

*By the Court.*—The judgment of the circuit court is affirmed.