HOPKINS, Plaintiff in error, vs. THE STATE, Defendant in error.

*October 7—October 24, 1905.*

*Abandonment of wife and children: Evidence: Instructions to jury.*

1. Under an amended information charging defendant with having on March 1, 1904, wilfully abandoned his wife and two minor children, leaving them in a destitute condition, and with having since said date, though of sufficient ability, unreasonably refused and neglected to provide for them, it was not error to admit evidence of such refusal and neglect to provide for his wife and children from the date named down to the time of filing such amended information, about a year thereafter.

2. Nor was it error in such case to charge the jury, in effect, that if they found that defendant, being of sufficient ability, "had unreasonably refused and neglected to provide for either his said wife or minor child ever since about March 1, 1904, beyond a reasonable doubt," then they should find him guilty. The failure to state which of the two minor children was referred to was not error, it being undisputed that one of them was not born until after the date mentioned.

3. It appearing that defendant and his wife had lived together eight years without his providing any house or home, a charge to the jury that if the wife, "being offered a comfortable house by him," refused without legal excuse to live with him, then she forfeited her right to support, but that the minor children were still entitled to support from him,—emphasized by another portion of the charge with respect to his claim that her refusal to live with him justified his refusal to support her or the children,—is *held* to have been misleading to the prejudice of the defendant.

ERROR to review a judgment of the municipal court for the eastern district of Waukesha county: D. S. TULLAR, Judge. *Reversed.*

It appears from the record that the wife, Mary, of the plaintiff in error made her verified complaint against him May 3, 1904, alleging that March 1, 1904, he wilfully and feloniously abandoned his wife, Mary Hopkins, leaving her

in a destitute condition, he being of sufficient ability and able to earn the means of her support, and did unreasonably refuse and neglect, and had since March 1, 1904, unreasonably refused and neglected, to provide for her, his wife, Mary, contrary to the statutes. Sec. 4587c, Stats. 1898. Upon that complaint a warrant was issued by the municipal court May 3, 1904, and was returned May 5, 1904, and the defendant brought into court and appeared by his attorney, and the state appeared by the then district attorney, A. M. Coombs. An examination and hearing being had, the court found that the offense charged had been committed and that there was probable cause to believe the defendant guilty, and accordingly he was bound over to the then next (September) term of the court, and was permitted to sign his own personal recognizance without surety, upon condition that he pay $2 per week to his wife, Mary, at least once in two weeks, and he was thereupon released.

On September 5, 1904, the then district attorney, Albert M. Coombs, filed his information charging the same offense mentioned in the complaint of the wife, Mary. The accused pleaded not guilty to that information, and thereupon, on motion of the district attorney and by consent of the accused, the case was continued until the March term of the court for 1905. March 21, 1905, the new district attorney, David W. Agnew, filed an amended information which, after the title to the cause, is in the words and figures following:

"I, David W. Agnew, district attorney in and for Waukesha county, do hereby amend the information in the above-entitled as heretofore set forth and as follows, and do hereby inform the court that *John Hopkins,* on the 1st day of March, A. D. 1904, at the city of Waukesha in said county and in the eastern municipal district, did wilfully and maliciously abandon his wife, Mary Hopkins, and minor children, to wit, Mary Hopkins and Nellie Hopkins, leaving her and said minor children in a destitute condition, and the said *John Hopkins,* being of sufficient ability and able to earn the means

of her support and the support of his said minor children, did unreasonably refuse and neglect so to do, and has since the 1st day of March, A. D. 1904, unreasonably refused and neglected to provide for his said wife, Mary Hopkins, and his said minor children, contrary to the statute in such case made and provided and against the peace and dignity of the state of Wisconsin."

Indorsed on that information is the following: "The defendant duly arraigned and in open court under the within amended information and a plea of not guilty. Entered this 21st day of March, A. D. 1905." Signed by the municipal judge. Upon such amended information he was tried and the verdict of guilty returned and filed March 22, 1905, and on March 28, 1905, he was sentenced to imprisonment in the county jail at hard labor for the term of four months, or until he should be thence discharged by due course of law. To reverse the judgment entered therein the accused sued out this writ of error.

The cause was submitted for the plaintiff in error on the brief of *D. J. Hemlock,* and for the defendant in error on that of the *Attorney General* and *A. C. Titus,* assistant attorney general.

CASSODAY, C. J.    1. It appears from the record that the accused was forty-two years of age and his wife twenty-nine years of age at the time of the trial. He had then been married to the complainant for nearly ten years. Their daughter, Mary, mentioned in the amended information, at that time lacked about four months of being nine years of age. The little child, Nellie, mentioned therein, was at that time about one year of age. That amended information charged the accused, in substantially the language of the statute (sec. 4587c, Stats. 1898), with having on March 1, 1904, wilfully and maliciously abandoned his wife, Mary, and the two minor children named, leaving her and them in a destitute condition, and that since that date he had unreasonably

refused and neglected to provide for his said wife, Mary, and his said minor children, contrary to the statute cited. We perceive no error in admitting testimony tending to prove that the accused had unreasonably refused and neglected to provide for his wife and children from March 1, 1904, down to the time of filing such amended information. *Firmeis v. State,* 61 Wis. 140, 20 N. W. 663; *Jenness v. State,* 103 Wis. 553, 79 N. W. 759.

2. Nor do we find any error in charging the jury to the effect that if the accused, "being of sufficient ability and able to earn the means of support for his wife and said minor child," had "unreasonably refused and neglected to provide for either his said wife or minor child ever since about March 1, 1904, beyond a reasonable doubt," then that it was their duty to find the accused guilty under the law of this state. The statute is certainly broad enough to cover such unreasonable refusal and neglect to provide between the time of the alleged abandonment and the time of filing such amended information, a year and twenty days thereafter. Another criticism of the portion of the charge thus mentioned is that it failed to state which of the two minor children was therein referred to. Obviously it did not refer to Nellie, who was disowned by the accused, since it is undisputed that she was not born until some weeks after the time mentioned in the portion of the charge so given. In that portion of the charge the trial court was merely stating the duty of the accused to support his wife and his child Mary, as prescribed in the statute.

3. The only trouble we have had with the case is as to the portion of the charge relating to "the reciprocal duty of the wife to live with her husband and observe all her marriage vows." In those portions of the charge the jury were told that:

"If, without legal excuse and being offered a comfortable house by him, she refuse to live with her husband, then such wife forfeits her right to support; but not so as to the minor

child or children. Such child is still entitled to the mainte-
nance and support of the father to the best of such father's
ability, regardless of the forfeiture of the wife of her rights
to such support."

And again:

"It is claimed on the part of the defendant that, because
his wife, Mary Hopkins, has refused to live with him and
cleaves to her mother and her mother's roof, therefore he is
justified in his refusal to contribute to the support of his
wife and his minor child or children. Now I charge you,
gentlemen, that it is the legal duty of every husband and
father to support and maintain his wife and minor child or
children to the extent of his ability, and, if you find from the
evidence in the case under the rules I have given you that
the defendant, being of sufficient ability to maintain or to
earn the means to support his wife and minor child or chil-
dren, has unreasonably refused or neglected to provide for
them the means of support, then you should find the defend-
ant guilty."

The question recurs whether, as applied to the evidence in
this case, such portions of the charge were misleading. The
wife testified to the effect that at the time Nellie was born in
March, 1904, the accused said it did not belong to him; that
since that time he had not tendered nor furnished her any
aid; that about that time she applied to the city for aid; that,
if he had offered her support after Nellie was born, she and
her mother would not have taken it; that, if he had offered
her money, she would have taken it, notwithstanding his dis-
owning Nellie; that, if he provided a home, a house, fur-
nished a home for her and promised that he would support
and maintain her, she would not go to live with him; that she
would die first by reason of his disowning Nellie. The wife's
mother, with whom she made her home, testified to the effect
that she did not want the accused to come to her house; that
she supposed she told him to go away from there and not to
come back again; that if he had behaved at all and come there
right she would have let him in. The accused testified to

the effect that at different times he had asked his wife to leave·
her mother's home so that he could have a home of his own;.
that quite a number of times she said she would not go; that
his mother-in-law had a dozen times forbidden him to come·
to her house, and that that was the reason he had not gone
there; that he did not want anything to do with them; that
he was at the house after Nellie was born; that after that
time he had not tendered any support to his wife or children;.
that they did not keep house when they lived at Genesee,
but boarded; that he never provided a house with furniture·
and necessary utensils for keeping house since he was mar-
ried; that during the last year before the trial he had not
bought any furniture nor done anything toward providing a
home for his family, but had requested them to come and
live with him during that time. Thus the evidence tends to
prove that they lived together eight years without his pro-
viding any house or home; and yet the court charged the
jury to the effect that, if the wife "being offered a comfortable
house by him" and she "without legal excuse" refused to live
with him, then she forfeited her right to support; but not so
as to the minor child or children, who were still entitled to
maintenance and support from the father. Such charge was
emphasized by the portion of the charge above quoted, pre-
senting to the jury the claim of the accused for refusing to
contribute to the support of his wife and children. We are
constrained to hold that such unqualified portions of the
charge were misleading. The question whether the wife's.
conduct was such as not to make it criminal for him to refuse·
or neglect to furnish such support was a question of fact for
the jury, under proper instructions from the court. There is
no ground for the contention that the verdict is not supported
by evidence.

*By the Court.*—The judgment of the municipal court for
the eastern district of Waukesha county is reversed, and the·
cause is remanded for a new trial.